[Civ. No. 2865. Fourth Dist. Sept. 14, 1942.]

J. LON CROMER, Respondent, v. SAM STRIEBY, Appellant.

Clifford W. Twombly and Ardene D. Boller for Appellant.

Darwin H. Wolford for Respondent.

GRIFFIN, Acting P. J.—This is an action by plaintiff and respondent against defendant and appellant on an open book account. From an adverse judgment defendant appeals.

On October 28, 1941, the respondent filed a complaint consisting of one cause of action on an open book account alleging that defendant was indebted to him in the sum of $700; that $283.99 was paid thereon; and that there is a balance due in the sum of $416.11 which has not been paid.

On November 10, 1941, the appellant demanded from the respondent a bill of particulars which was furnished on December 15, 1941. On December 6, 1941, appellant filed his answer denying the allegations of the complaint. The trial of the matter was had on January 14, 1942. Judgment was rendered against appellant in the sum of $416.01. Respondent Cromer was called as a witness. Appellant then objected to the introduction of any evidence on the ground that a bill of particulars had not been furnished, after demand, within the time prescribed by law. The objection was overruled. Cromer then testified and the court found that he had been in the business of cattle feeding for a period of ten years or more; that the method employed by him in carrying on his business was to purchase feed from farmers in. Imperial Valley and buy cattle from other states, shipping the cattle in and feeding them; that this food, in the

main, was bought several months before it was to be used, and the method frequently used was for the respondent to advance money to a farmer or grower, with which the farmer or grower was to plant and raise the feed; that these advances were made in different sums, as necessity arose; that when the food was grown respondent would pasture his cattle thereon and would credit to the account of the grower or farmer the price of the pasturage until the credit equalled the charges; then respondent would pay the balance, if any, in cash.

In conformity with this verbal agreement respondent testified that he delivered to appellant three checks, one in the sum of $400, dated April 7, 1938, one in the sum of $200, dated April 26, 1938, and one in the sum of $100, dated May 1, 1938; that two credits were made against the charge, one in the sum of $272.06, paid to him by one T. M. Bates, and another credit for $11.93, also turned in to him by Mr. Bates for the account; that as to the nature and method of carrying on his business he testified that his books were kept on all of his feeding business together; that after he had given Strieby the $700 he found that Strieby was growing no feed on the place for which the advance had been made; and he made several demands on Strieby for the pasturage for which he had advanced the money; that had Strieby grown the feed on the place on which the original deal was made he would have "pastured off" according to agreement.

With reference to his books, Cromer testified that one Allen was his bookkeeper at the time of the trial and that Allen had been keeping his books since one Pearson had become ill; that Pearson became ill in December, 1940; that prior to that time and since 1935, Pearson had been keeping the books; that because of a mental illness Pearson could not be brought into court to testify and could not be examined; that respondent made no change or alteration in the books when he took them from Pearson's possession and placed them in the hands of Allen.

Allen testified that he knew Pearson well for many years; that he knew his handwriting, and the entries made in the ledger were in the handwriting of Pearson; and further that the other books of respondent Cromer which were turned over to him under the Strieby account were also in the handwriting of Pearson; that he had worked with Pearson and

had come in contact with him and with other books that he kept; and that the handwriting in the journal which was turned over to him by Cromer was the handwriting of Pearson. The rest of Allen's testimony described the entries in the books and identified and explained the charges and credits as they appeared from the books. Cancelled checks in the sums claimed to have been paid to appellant were received in evidence. The ledger sheet containing the account of Strieby, showing the dates of entry, the dates of the credits and balance due were received in evidence.

■ Appellant first contends that there is no evidence in the case as to how, when, or from what information entries were put into the records. In other words, it is appellant's contention that there was not sufficient evidence to show a proper foundation for the entry of the books into evidence, and he relies upon the case of *Chan Kiu Sing* v. *Gordon*, 171 Cal. 28 [151 Pac. 657]. In this respect, appellant argues that even though respondent testified, over objection, that he gave the total sum of $700 to the appellant and that appellant was to grow feed on certain land which he had leased and that this money which he gave to appellant was not a loan, respondent was not authorized to designate this transaction as an open book account but that it amounted only to "gambling with the grower as a sort of hedge should he need or desire fall or winter feed"; that in the light of the testimony of the respondent, "if he had any cause of action against the defendant it would be either for breach of an oral contract, or for money had and received . . . that the transaction between the plaintiff and the defendant did not constitute an open book account and no other remedy was open to the plaintiff because of the statute of limitations."

As to the first point raised, it clearly appears from the record that the entries were made in the usual and ordinary course of the bookkeeping business. The cancelled checks respondent himself gave to Strieby and they were regularly entered by his bookkeeper Pearson. It is not disputed that the money was advanced by the respondent himself in the form of the checks in evidence. Mr. Allen's testimony as to his personal knowledge of Pearson's handwriting and that the entries were in the books when he received them corroborates respondent's testimony. The entries were the first permanent entries of the transaction; they were made within reasonable proximity of the trans-

action; and they were quite evidently correct because neither appellant nor his counsel in the examination of witnesses in reference to the books in court challenged the items claimed therein. There can be no question, from an examination of the checks and the record of account, that appellant received the total sum claimed. If he contended that these amounts were repaid to respondent, which he did not, the burden would have been upon him to establish this fact. (*Dyer* v. *Minturn,* 47 Cal. App. 1 [189 Pac. 1046].) We are convinced that the evidence sufficiently establishes an open book account with a balance due in the amount found by the court.

In considering the next point raised, the evidence shows that in the ordinary course of business respondent advanced money to appellant for certain feed to be grown upon a certain place. It shows that appellant did not grow such feed and that he did not pay respondent back the money he had received and that he only supplied feed and then only at a different place, to a different person, and to the extent shown by the credit. Appellant now argues that when respondent made the deal the feed was respondent's and any risk connected therewith was respondent's risk; that there might be feed and there might not be feed, and if there were feed respondent might have cattle to feed it to and again he might not. In other words, the sum total of his argument is that appellant and respondent were gambling on the results of this crop and he was therefore not obligated to respondent for any failure to produce a sufficient crop to offset the advance. The court did not find that such was the result of the evidence, but on the other hand justly found that appellant was indebted to respondent for the balance due on an open book account.

The final point raised by appellant is this: Is it an abuse of discretion on the part of the trial court to allow the introduction of evidence on a common count over the objection of the defendant, where a bill of particulars was demanded of the plaintiff by the defendant and the bill of particulars was not furnished within the ten days period prescribed by section 454 of the Code of Civil Procedure?

In the case of *McCarthy* v. *Mt. Tecarte Land & Water Co.,* 110 Cal. 687 [43 Pac. 391], the court construes this section as it existed prior to its amendment in 1939 (Stats. 1939, p. 1005). The amendment increased the period within which

the bill of particulars had to be furnished after demand from 5 to 10 days. In the cited case it was held that the trial court had the discretion to determine whether or not to exact the penalty of precluding the plaintiff from giving evidence thereof. The reasoning expressed in that case is not affected by the amendment and is a complete answer to appellant's question. (See also *St. John* v. *Consolidated Construction Co.*, 182 Cal. 25 [189 Pac. 276].)

In the instant case the bill of particulars was short, consisting only of five entries, and was served upon the defendant 30 days before the day of trial. No motion for continuance was made, no prejudice was shown nor attempted to be shown. The correctness of the items was not questioned other than by the general denial in the answer. Appellant did not even take the witness stand and deny the transaction. In addition to this, the complete account of respondent, contained in the journal and ledger, was in court, and made available to appellant for his examination or any cross-examination. No abuse of discretion appears

Judgment affirmed.

Marks, J., concurred.